615 A.2d 814

**Lynne ABRAHAM, District Attorney for the City and County of Philadelphia, Petitioner,**

v.

**The DEPARTMENT OF CORRECTIONS OF the COMMONWEALTH OF PENNSYLVANIA; Joseph D. Lehman, Secretary of the Department of Corrections; the Commonwealth of Pennsylvania; Robert P. Casey, Governor of the Commonwealth of Pennsylvania et al., Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 6, 1992.

Decided Aug. 18, 1992.

Reargument Denied Sept. 17, 1992.

82

Sarah B. Vandenbraak, Chief, Civil Litigation Unit, for petitioner.

Amy L. Putnam, Deputy Gen. Counsel, for respondent.

Peter Rosalsky, for amicus curiae, The Defender Ass'n of Philadelphia.

Before CRAIG, President Judge, DOYLE (P.), J., and LORD, Senior Judge.

CRAIG, President Judge.

Before this court is a motion of the Pennsylvania Department of Corrections to open a peremptory judgment in a mandamus action addressed by Philadelphia's District Attorney (DA) to the original jurisdiction of this court. The Commonwealth seeks to open this court's peremptory mandamus order of January 13, 1992, requiring the Commonwealth to take into custody certain classes of criminal defendants incarcerated in Philadelphia county prisons by aggregating consecutive sentences under 42 Pa.C.S. § 9757, so that, if the aggregated maximum term is five years or more, confinement shall be by the Commonwealth pursuant to 42 Pa.C.S. § 9762(1).

### History of the Case

On May 30, 1991, the DA filed a petition for review in this court seeking an order compelling the Commonwealth to aggregate all consecutive sentences of each prisoner, regardless of the designated place of confinement, and to take into custody criminal defendants incarcerated in the Philadelphia County prison whose aggregated maximum sentence is five or more years. The DA requested this relief chiefly because the City of Philadelphia must now release pre-trial detainees as a consequence of the prison-population cap imposed upon the Philadelphia County jail by the federal court's order in *Harris v. Reeves*, U.S.Dist.Ct.E.D.Pa., No. 82–1847.

In her petition, the DA relied upon 42 Pa.C.S. §§ 9757 and 9762(1) of the Judicial Code, which state:

**§ 9757. Consecutive sentences of total confinement for multiple offenses**

Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum sentence shall not exceed one-half of the maximum sentence imposed.

## § 9762. Sentencing proceeding; place of confinement

All persons sentenced to total or partial confinement for:
(1) maximum terms of five or more years shall be committed to the Bureau [now Department] of Corrections for confinement;

(2) maximum terms of two years or more but less than five years may be committed to the Bureau of Corrections for confinement or may be committed to a county prison within the jurisdiction of the court;

(3) maximum terms of less than two years shall be committed to a county prison within the jurisdiction of the court except that as facilities become available on dates and in areas designated by the Governor in proclamations declaring availability of State correctional facilities, such persons may be committed by the Bureau of Corrections for confinement.

In ruling upon the DA's peremptory mandamus request, this court found the following facts, which the motion to open has not contested:

1. The Philadelphia County prison is under a federal prison cap order in *Harris v. Reeves,* U.S.Dist.Ct.E.D.Pa., No. 82–1847, limiting the population of the Philadelphia County prisons. The present population of the Philadelphia County prisons is 4,998 prisoners, with an approved capacity of 3,750. The cap order limits the admission of pre-trial detainees to those charged with violent crimes but not those charged with crimes such as robberies without a weapon, burglaries or car theft.

2. The admission of defendants charged with drug offenses is subject to minimum thresholds of the amount of drugs possessed.

3. The admission of defendants subject to bench warrants is not permitted unless there are two or more non-summary bench warrants on separate criminal charges.

4. Under a recent consent decree for the reduction of the Philadelphia County prison population, Philadelphia must release 175 pre-trial inmates per week among those charged with drug offenses, admitted for outstanding bench

warrants or whose legal status has changed so that they would not now be admitted under the minima stated above.

5. At present, approximately 600 Philadelphia prisoners are eligible for release under the above, and approximately 90 of the prisoners entering each week will be eligible for release under this same provision.

6. The evidence shows that releases mandated by the *Harris* case cap threaten irreparable harm to Philadelphia and its public. The rate of failures to appear in the Philadelphia criminal courts has increased because of the limitations on the enforcement of bench warrants with, at present, 50% of the defendants not in custody failing to appear for felony preliminary hearings. Rearrests of pre-trial detainees released under the cap are now at a rate of 37%. As a result, many criminal prosecutions cannot be completed.

7. Law enforcement officials confirm that the releases with respect to drug offenses hamper the development of drug prosecutions because potential witnesses assume that persons charged will not be incarcerated pending trial.

8. The state at present will review a prisoner's status and make an aggregation determination only as to sentences under which the prisoner is designated for admission to a state facility by a judge.

9. State prisoners facing a subsequent Philadelphia commitment are treated by the state as being in state custody subject to detainer sentences, pursuant to which they are returned to the county prison after the conclusion of their state sentence.

10. The state has refused to admit prisoners with consecutive sentences noted on Philadelphia County prison commitment forms, even though the aggregated maximum term would exceed five years.

11. The state has also refused to admit prisoners where the state sentence is consecutive to a sentence listed on a Philadelphia County prison commitment form.

12. The DA claims that aggregation and acceptance of prisoners into state custody to the maximum extent would

cause the state to receive between 300 and 800 sentenced prisoners who are presently incarcerated in Philadelphia County prisons.

13. Both the state and Philadelphia are presently planning the construction of new prisons. The state proposes the construction of new prisons to provide 10,000 new beds.

14. As of November 30, 1991, the male prisoner capacity of all state facilities was 14,653, with a committed population of 21,662, so that the state institutions are presently at 147.8% of rated capacity with respect to male prisoners. State prison capacity computations assume single-prisoner-celling, not double celling.

15. With respect to female prisoners, the state has 1,045 female prisoners in two institutions, with a total capacity of 834, so that the state is operating at 125.2% of capacity as to female prisoners.

16. The state projection is that prison population will grow by the end of 1995 to 31,500 prisoners. Even with the proposed additional 10,000 capacity, thus reaching 25,200 capacity altogether, the state facilities may remain over capacity on the basis of this projection.

17. The *Harris* case cap limits the Philadelphia County prison system to an approved capacity of 3,750. The present population of 4,998 results in an occupancy of 144% of capacity.

18. The state, in determining whether a commitment is to the Philadelphia County prison, has relied in part upon the Philadelphia County prison commitment form. This form is routinely used whenever the maximum term of incarceration is less than two years.

The DA contends that the county prison commitment form is a "boilerplate form" not signed by a judge, which is routinely used and, according to the DA, does not necessarily reflect the sentencing judge's determination as to where the prisoner should be incarcerated. The DA contends that the sentencing notes of testimony and the information signed by the sentencing judge more reliably indicate the place of incarceration being designated by the sentencing judge.

However, with respect to this matter—determining which Philadelphia records are the reliable ones on which to base this court's conclusion as to the proper classification of the place of commitment—neither this court nor the state can ignore the official Philadelphia commitment forms, whether they be considered routine or boilerplate or not. Even though such forms are filled out on the court's behalf by a clerk and not signed by a judge, neither the state nor this court is in any position to question the propriety or correctness of such records. If the present method of recording commitments does not accord with the intention of the Philadelphia judges, then the judges must take steps to provide assurance that their commitment actions are correctly reflected in the official records.

█ Therefore, the classification of prisoner commitments for the purposes of this case will be in accordance with the official records applicable to each prisoner, and the absence of a judicial specification of place of commitment on an information form cannot be deemed to override a county prison designation of commitment on the commitment form.

## Analysis

In reaching the peremptory mandamus order of January 13, 1992, this court, relying upon *Gillespie v. Commonwealth,* 106 Pa.Commonwealth Ct. 500, 527 A.2d 1061 (1987), and 42 Pa.C.S. §§ 9757 and 9762(1), held that the Commonwealth has a mandatory duty to aggregate *all* consecutive sentences and take into custody those prisoners whose maximum sentence, so aggregated, is five years or more. Thus, the Commonwealth would have to aggregate consecutive sentences which commit to state prisons, those which commit to county prisons, those which do not indicate place of incarceration, and combinations thereof.

An indication of the complications of this matter can be obtained by listing the various classes of sentences that are available, such as:

(1) State sentences, which include all sentences where the maximum is over five years. These sentences alone present no problem.

(2) Sentences where the maximum is over two years. In these cases, the trial judge may commit to state or county institution. Regardless of the institution to which he is committed, the prisoner is for the purposes of parole under the jurisdiction of the Parole Board, but if committed to a county jail, he is under the jurisdiction of the trial judge for the purpose of work release or other matters. In 61 P.S. § 2141, the law states:

> Whenever any person has been sentenced to undergo imprisonment in a county jail or workhouse, hereafter referred to as a jail, for a term of less than five years the court, at the time of sentence or at any time thereafter upon application made therefor, may by order direct the sheriff, prison keeper, jail keeper, warden or other administrative head of a jail to permit the prisoner to leave the jail during necessary and reasonable hours for the purpose of working at his employment, conducting his own business or other self-employed occupation, including housekeeping and attending to the needs of family, seeking employment, attendance at an educational institution, securing medical treatment or such other lawful purposes as the court shall consider necessary and appropriate. The order of court may be rescinded or modified at any time with or without notice to the prisoner.

(3) Sentences with less than a two-year maximum which are served in county jails, where the trial judge retains jurisdiction for parole and other matters outlined in 61 P.S. § 2141 above.

The Commonwealth raises several objections to the order of peremptory mandamus, which are as follows: (1) The order conflicts with the plain language of § 11 of the Act of February 8, 1842, 61 P.S. § 636.1, which gives Philadelphia judges discretion to sentence persons to either a state or county prison; (2) the order disregards a Pennsylvania Supreme Court case, *Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242 (1990), which, the Commonwealth argues, stands for the proposition that sentencing power rests exclusively with the trial

court; (3) the order would violate the separation-of-powers doctrine because, under such an interpretation, the legislature would thereby be encroaching upon the finality of judicial sentences; and (4) the order usurps the jurisdictions of the court of common pleas and Parole Board.[1]

*1. Whether the Order Conflicts With 61 P.S. § 636.1*

The Commonwealth argues that the order conflicts with § 11 of the Act of February 8, 1842, 61 P.S. § 636.1, which states:

> Every person who shall hereafter be convicted in any court of criminal jurisdiction, in the city or county of Philadelphia, of any crime, the punishment of which would now be imprisonment in the state penitentiary, may be sentenced by the proper court to suffer imprisonment, by separate or solitary confinement, at labor, either in the state penitentiary, or in the Philadelphia county prison, at the discretion of the courts, excepting in cases of murder in the second degree, and manslaughter.

Thus, section 11 of the 1842 Act purports to give sentencing judges in Philadelphia County complete discretion to sentence defendants to either state prisons or the Philadelphia County prison, except in cases of murder and manslaughter.

The Commonwealth argues that because the Act of 1842 specifically refers to Philadelphia County and its court system, this specific statute must prevail over 42 Pa.C.S. § 9757, which the Commonwealth refers to as a general statute. The Commonwealth relies upon § 1933 of the Statutory Construction Act, 1 Pa.C.S. § 1933, for the proposition that a specific statute prevails over a general statute. Section 1933 states:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another

---

[1]. The Commonwealth seeks to open, rather than appeal, the peremptory judgment because peremptory judgments are not immediately appealable; the proper method for seeking post-judgment relief is a motion to open or vacate the judgment. The peremptory judgment may be opened upon cause shown. Pa.R.C.P. 1098; *Mertz v. Lakatos*, 21 Pa.Commonwealth Ct. 591, 347 A.2d 753 (1975).

statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

However, the DA argues that section 11 of the 1842 Act is no longer in effect, having been repealed by 42 Pa.C.S. § 9762, by necessary implication.

Section 2(g) of the Judiciary Act Repealer Act,[2] 42 P.S. § 20002(g), states, "all other parts of those acts which are specified in this section and all other acts and parts of acts are hereby repealed insofar as they are in any manner inconsistent with this Act or the Act to which this is a supplement."

Because 42 Pa.C.S. § 9762 was enacted after the Act of 1842, and the General Assembly has indicated that current sections of the present Judicial Code repeal those previous sections in conflict with the present Judicial Code, 42 Pa.C.S. § 9762 repeals section 11 of the 1842 Act and this court's reliance upon 42 Pa.C.S. § 9762 is proper.

### 2. Whether This Court's Order Erred In Not Remanding Each Sentence To The Trial Court For Resentencing

The Commonwealth argues that this court's order ignores our Supreme Court's decision in *Commonwealth v. Ward*, 524 Pa. 48, 568 A.2d 1242 (1990), a case which, the Commonwealth argues, mandates that we remand each involved defendant to the trial court for resentencing.

The Commonwealth also argues that this court's interpretation of 42 Pa.C.S. § 9757 violates the separation-of-powers doctrine because it subjects a sentence imposed by a trial court to modification by legislative act.

In *Ward*, the defendant was convicted of various counts of burglary and robbery and, after an earlier appeal, was sen-

---

**2.** Act of April 28, 1978, P.L. 202, No. 53, *as amended.* The Judiciary Act Repealer Act amends and expressly repeals sections of the Judicial Code.

tenced by the common pleas court to two and one-half years to ten years for the robbery and two and one-half to twelve and one-half years for the burglary. By directing that service of the second sentence would commence upon the expiration of the maximum of the first sentence, the sentencing judge in effect ordered the minimum sentences to run consecutively and the maximum sentences to run concurrently.

The defendant appealed to the Superior Court, challenging the trial court's imposition of a partially consecutive and partially concurrent sentence. The Superior Court agreed with the defendant that consecutive minimums and concurrent maximums constituted an improper sentence. The Superior Court remanded the case to the trial court and directed the trial court to impose an aggregated sentence of five years to twenty-two and one-half years, thus directing the trial judge to treat the maximums as consecutive rather than concurrent.

The defendant appealed that order to the Supreme Court, arguing that the Superior Court's order intruded upon the trial court's sentencing discretion. The Supreme Court agreed, stating that the trial court is granted broad discretion in determining a sentence. The Supreme Court stated:

> Where an appellate court determines that a sentence is illegal or otherwise improper, the proper remedy is to vacate the sentence and remand the matter to the trial court for sentencing in accordance with the ruling of the appellate court. . . . .
>
> An appellate Court has no power to impose a sentence; that power is to be exercised exclusively by the trial court. The trial court's right to this power can be usurped only by the legislature, which has the power to prescribe mandatory sentences. Since there was no mandatory sentence to be imposed for the offenses appellant had committed, the trial court had the discretion to impose a sentence within the statutory guidelines.

*Ward*, 524 Pa. at 52, 568 A.2d at 1244.

Thus, the Supreme Court vacated the Superior Court's order and remanded the case to the trial court for "legal resentencing."

However, *Ward* is distinguishable from this case. In *Ward*, the Superior Court remanded to the trial court with instructions to amend a concurrent maximum sentence to be a consecutive one. The Supreme Court disagreed because a trial court has discretion in sentencing a defendant to either a consecutive or concurrent term.

■ In this case, this court's order states that *if* the trial court chooses to issue a consecutive sentence, the correctional authorities must treat it as aggregated with the preceding sentence. This court is not requiring sentencing judges to issue consecutive sentences.

In *Gillespie v. Commonwealth,* 106 Pa.Commonwealth Ct. 500, 527 A.2d 1061 (1987), a defendant was originally sentenced for a conviction of voluntary manslaughter to five to ten years. While serving that sentence, he was convicted of possessing a controlled substance. The sentencing judge sentenced him to a consecutive term of three to six months. However, the sentencing judge did not indicate whether the consecutive sentences were to be aggregated. The Department of Corrections, on its own, aggregated the sentences and informed Gillespie that his sentence was five years, three months to ten years, six months.

Gillespie challenged the Department's action because he argued that the aggregation of the consecutive sentences was a discretionary function of the sentencing court.

This court rejected Gillespie's argument, stating:

The pertinent inquiry . . . becomes whether the aggregation of consecutive sentences under 42 Pa.C.S. § 9757 is discretionary with the sentencing court . . . or is mandatory where consecutive sentences are imposed, . . . . Our reading of the statute . . . compels us to conclude that once the sentencing court imposes a consecutive sentence, aggregation with other consecutive sentences is automatic and mandatory under 42 Pa.C.S. § 9757.

. . . The discretion of the sentencing judge is preserved in that the sentencing judge has the discretion to impose either consecutive or concurrent sentences.

*Gillespie,* 106 Pa.Commonwealth Ct. at 507–08, 527 A.2d at 1065.

Significantly, in *Gillespie,* this court did not require the Department of Corrections to defer to the sentencing judge with respect to aggregation; this court let stand the Department's aggregation of Gillespie's sentences.

■ Because aggregation is mandatory, the discretionary aspect of a trial judge's sentence is not at issue in this case. Thus, the Commonwealth's contention that we must remand to resentence each individual prisoner cannot prevail, nor can the Commonwealth's argument that this court's interpretation of 42 Pa.C.S. § 9757 violates the separation of powers doctrine.

### 3. Usurpation of Trial Judge's Discretion To Parole

The Commonwealth argues that the practical effect of this order would reduce the trial court's control over prisoners' paroles, thus reducing the discretionary powers of the trial judge.

■ Section 17 of the Parole Act,[3] 61 P.S. § 331.17, leaves to the sentencing judge the power under section 1 of the Act of June 19, 1911, P.L. 1059, 61 P.S. § 314, to parole a prisoner whose maximum sentence is less than two years. Under the same section 17 of the Parole Act, the Parole Board has the power to parole prisoners with maximum sentences of more than two years.

The Commonwealth argues that, under this court's order as presently written, trial judges who have retained parole jurisdiction over individuals by sentencing them to a term of less than two years, can be divested of this control if a second offense is committed and a sentencing judge imposes a consecutive sentence. If those sentences were to be aggregated so that the aggregated maximum term would be over two years, the first judge would be stripped of parole authority.

However, 42 Pa.C.S. § 9757 mandates the aggregation of consecutive sentences and Section 17 of the Parole Act does not contain language mitigating this mandate. In *Gillespie,*

3. Act of August 6, 1941, P.L. 861, *as amended.*

this court noted that one of the effects of the aggregation of Gillespie's sentences was that the latest-sentencing trial judge lost parole authority. In the *Gillespie* type of situation, where a prisoner is already under Parole Board authority by reason of an earlier sentence of two years or more, the judge imposing a *subsequent* consecutive sentence of less than two years has thereby subjected that sentence to aggregation under 42 Pa.C.S. § 9757, causing the aggregated sentence to be under Parole Board jurisdiction, *Gillespie,* and is necessarily aware that he lacks the discretion available and appropriate for a lone sentence of less than two years.

Pursuing the same rationale, this court must agree with the Commonwealth that where the "county" sentence of less than two years stands alone *or precedes* a "state" sentence of two years or more, the judge imposing the "county" sentence, normally involving an offense of lesser gravity, should not be stripped of discretion to parole (to the street or work release or treatment) by aggregation with subsequent "state" sentences. Therefore, this court's order must be modified to provide that, for the purpose of determining place of confinement and parole, a county sentence shall not be aggregated with any later-imposed sentences.

### 4. Aggregation of Parole Violations and Completed Sentences with Previous Consecutive Sentences

█ The Commonwealth argues that part of this court's order must be opened because of the infeasibility of aggregating certain sentences. The Commonwealth specifically objects to this court's order that the Commonwealth aggregate:

1. . . . . .

(c) any and all sentences imposed for parole or probation violations, and

(d) any and all sentences on which the prisoner has been paroled, but the prisoner is currently serving a sentence imposed to run consecutively to the paroled sentence or sentences,

(e) any and all sentences on which the prisoner has completed the maximum term of imprisonment, and the prison-

er is currently serving a sentence imposed to run consecutively to the completed sentence.

The Commonwealth offers the following hypothetical situations in support of its argument. Assume that prisoner Doe's first sentence is six to twelve months in the Philadelphia County prison effective January 1, 1991. Doe's second sentence is two to four years, also in the Philadelphia County prison.

Assume that Doe served his six-month minimum and was paroled from the first sentence by the sentencing judge on July 1, 1991. On that date Doe immediately begins serving his second sentence. On July 2, 1991, Doe is involved in a prison assault and the trial judge revokes his parole and orders him to serve the remaining six months of backtime consecutive to the second sentence which he had been serving since July 1, 1991.

This court's January 13, 1992 order would mandate aggregation of the parole violation with Doe's second sentence, resulting in a two-year, six-month minimum and four-year, six-month maximum sentence. This sentence is impermissible because it would violate 42 Pa.C.S. § 9757, which states that a minimum term cannot be more than one-half of the maximum term.

If the trial judge adds six months to the maximum sentence only, giving Doe a two-year to four-year, six-month sentence, Doe would be eligible for parole two years after July 1, 1991 and would not be penalized for his parole violation except by an extension of unsupervised time.

This court also directed the aggregation of sentences from which inmates have served their maximum term and are now serving a consecutive sentence to the completed sentence. Again, assume that Doe's first sentence is six to twelve months and his second sentence, to run consecutively, is two to four years, effective January 1, 1991.

If Doe is not involved in an assault, and his sentences are not aggregated, Doe would be eligible for parole on July 1, 1991. On that date, he would begin serving his second

sentence and would also be serving the parole time from the first sentence. On January 1, 1992, Doe's maximum sentence from his first sentence would be completed and he would have served six months of his second sentence. Doe's incarceration would end July 1, 1993, and he would be subject to supervision until July 1, 1995.

The January 13, 1992 order aggregates his sentences so that he has a two and one-half year to five year sentence. Thus, Doe is subject to supervision until January 1, 1996, six months more than if Doe's sentence had not been aggregated.

Because we agree with the Commonwealth that questions exist regarding the effect of sections 1(c), (d), and (e) of this court's order of January 13, 1992, we shall also delete that portion of the order and restate the order, in its entirety accordingly.

One other question could arise under the following scenario. Doe is sentenced by the trial judge to a county sentence, for example, 11½ to 23 months. He is paroled at his minimum of 11½ months but commits another crime before the end of his parole period of 23 months and receives on the new crime a sentence of more than 2 years maximum (a state sentence) before his violation-of-parole hearing before the court.

At the hearing on his parole violation, the court is not free to give a new sentence; if it acts it must recommit to jail. *Commonwealth of Pennsylvania v. Fair*, 345 Pa.Superior Ct. 61, 64, 497 A.2d 643, 645 (1985), states:

> The power of the court after a finding of violation of parole in cases not under the control of the State Board of Parole is 'to recommit to jail....' Act of June 19, 1911, P.L. 1059 § 1, as amended, 61 P.S. § 314. There is no authority for giving a new sentence with a minimum and maximum. After recommitting the parolee, the court retains the power to grant reparole. Id.

Thus, such a recommittal is just that—a recommittal and not a sentence; the action on the parole violation is therefore not subject to aggregation.

Hence, the order should make clear that it does not require aggregation of such recommittals for county parole violations.

## Conclusion

Accordingly, the Commonwealth's petition to open the peremptory judgment is granted to the extent that the order shall require the Commonwealth to aggregate certain classes of sentences that are declared to be consecutive by the sentencing court, as follows:

In addition to aggregating consecutive sentences when all of them have been expressly designated for state correctional facilities by the sentencing court, the Commonwealth respondents shall aggregate sentences in each of the following classes with sentences in the same class, and shall also aggregate one or more sentences in each of the following classes with one or more sentences in any of the other following classes:

Class A.   Sentences designated for state correctional facilities.

Class B.   Sentences imposing confinement for maximum terms of two years or more but less than five years, declared to be consecutive by the sentencing court, where county confinement is not indicated by judicial statement or county prison commitment form;  and

Class C.   County sentences which both (i) impose confinement for a maximum term of less than two years;  and (ii) are declared by the sentencing court to be consecutive to an earlier sentence with a maximum of two or more years, unless such earlier sentence has a maximum of less than five years, and county confinement was indicated for such earlier sentence by judicial statement or county prison commitment form.

The Commonwealth shall not aggregate any county sentence imposing confinement for a maximum term of less than two years if such sentence does not satisfy requirement (ii) of Class C above, and the Commonwealth shall not aggregate any recommittals for county parole violations, as such recommittals are defined in the foregoing opinion.

The foregoing provisions shall have prospective effect only, in that the order shall embrace within Classes B and C only sentences imposed subsequent to the thirtieth (30th day) after the date of the order entered pursuant to this opinion.

The order, restated accordingly, follows.

## ORDER

NOW, August 18, 1992, upon consideration of Respondents' Motion to open judgment, it is hereby ORDERED as follows:

1. The previous order in this case, dated January 13, 1992, is hereby vacated.

2. In connection with any request by the Petitioner or the City Respondents that the Commonwealth Respondents admit prisoners for confinement in state correctional facilities, the Commonwealth Respondents shall, to the extent stated below, aggregate consecutive sentences for each prisoner so designated by aggregating the consecutive minimum terms into one minimum term and aggregating the consecutive maximum terms into one aggregated maximum term. In addition to aggregating consecutive sentences, when all of them have been expressly designated for state correctional facilities by the sentencing court, the Commonwealth respondents shall aggregate sentences in each of the following classes with sentences in the same class, and shall also aggregate one or more sentences in each of the following classes with one or more sentences in any of the other following classes:

Class A. Sentences designated for state correctional facilities.

Class B. Sentences imposing confinement for maximum terms of two years or more but less than five years, declared to be consecutive by the sentencing court, where county confinement is not indicated by judicial statement or county prison commitment form; and

Class C. County sentences which both (i) impose confinement for a maximum term of less than two years; and (ii) are declared by the sentencing court to be consecutive to an earlier sentence with a maximum of two or more years,

unless such earlier sentence has a maximum of less than five years, and county confinement was indicated for such earlier sentence by judicial statement or county prison commitment form.

The Commonwealth shall not aggregate any county sentence imposing confinement for a maximum term of less than two years if such sentence does not satisfy requirement (ii) of Class C above, and the Commonwealth shall not aggregate any recommittals for county parole violations, as such recommittals are defined in the foregoing opinion.

The provisions of this paragraph 2 shall have prospective effect only, in that it shall embrace within Classes B and C above only sentences imposed subsequent to the thirtieth (30th) day after the date of this order.

3. With respect to prisoners whose sentences have been aggregated in accordance with paragraph 2 above, the Commonwealth Respondents shall immediately take custody of the following:

(a) Any prisoner with an aggregated maximum term of imprisonment of five or more years; and

(b) any prisoner with an aggregated maximum term of imprisonment of two or more years imprisonment but less than five years imprisonment where the commitment form of the latest consecutive sentence imposed designates state correctional facilities (or any institution thereof) as the place of confinement.