**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**James WILSON, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1999.

Filed Dec. 29, 1999.

Daniel M. Preminger, Philadelphia, for appellant.

Catherine Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee (submitted).

Before SCHILLER, OLSZEWSKI and BECK, JJ.

BECK, J.:

¶ 1 Is a defendant, who is in the position of a pretrial detainee and under house arrest, entitled to credit for time served outside of prison where his release was mandated by a federal court order? The trial court determined that appellant was not entitled to credit. After careful consideration of the applicable statute and relevant case law, we affirm.

¶ 2 In April of 1991, appellant was tried and convicted *in absentia* for a series of drug charges. In September of that year, he was apprehended and placed in prison. Counsel for appellant filed various post-trial submissions. Over two years later, in November of 1993, the trial court granted appellant a new trial, but imposed a $500,-000.00 bail order, which appellant could not pay. Within thirty days of the trial court's order, the Commonwealth appealed the grant of a new trial to this court. At approximately the same time, appellant was released from prison due to a federal court order.[1] His release required that he

---

1. In a case titled *Harris v. Reeves*, U.S.Dist.Ct. E.D.Pa., 761 F.Supp. 382 (1991), the federal court, among other things, "limit[ed] the admission of pre-trial detainees [in Philadelphia County prisons] to those charged with violent crimes." *Abraham v. Dept. of Corrections of Comm.*, 150 Pa.Cmwlth. 81, 615 A.2d 814 (1992), *overruled on other grounds, Common-* *wealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996). The purpose of the order, commonly referred to as the "prison cap," was to relieve overcrowding in Philadelphia prisons. Appellant, apparently due to his status as a pre-trial detainee, was released while this court considered the trial court's grant of a new trial.

be placed on house arrest, a program with which he complied for a period of time.

¶ 3 In September of 1995, a panel of this court reversed the trial court's grant of a new trial. Appellant, still on home monitoring, filed an appeal to the supreme court. While awaiting the supreme court's decision, in October of 1996, appellant moved from his residence but failed to inform authorities of the move. His house arrest supervision ended on that date.[2] Despite the expiration of his house arrest status in late 1996, appellant continued to live in his home. In April of 1998, the supreme court affirmed that appellant was not entitled to a new trial. About six months later, in October 1998, appellant appeared in court to be sentenced.

¶ 4 The trial court imposed a four to eight year prison term. Appellant was credited for the time he spent in prison, i.e., September of 1991 through December of 1993. However, the trial court refused to grant him credit for the time he spent on house arrest or any time thereafter. On appeal, appellant claims he is entitled to credit for the time on house arrest (December, 1993 through October, 1996).[3]

¶ 5 We begin our analysis with a close reading of the statute. The statute states that only *custodial* time is creditable and provides:

> [T]he court shall give credit as follows:
> (1) Credit against the maximum term and any minimum term shall be given to the defendant for *all time spent in custody* as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending resolution of an appeal.

42 Pa.C.S.A. § 9760(1) (Purdons 1999) (emphasis supplied). *See also* Pa. R.Crim.P. 1406(b) (credit shall be provided for any days spent in custody).

¶ 6 Our courts consistently have interpreted the custodial time referred to in § 9760(1) as confinement in prison. *See e.g., Commonwealth v. Kriston,* 527 Pa. 90, 588 A.2d 898 (1991); *Commonwealth v. Blair,* 699 A.2d 738 (Pa.Super.1997); *Commonwealth v. Shartle,* 438 Pa.Super. 403, 652 A.2d 874 (1995), *appeal denied,* 541 Pa. 637, 663 A.2d 690 (1995). Despite this fact, appellant relies on *Kriston* for relief.

¶ 7 The defendant in *Kriston* was sentenced to serve a 30–day mandatory prison term for his second DUI conviction. Contrary to law, prison authorities erroneously released him to a home-monitoring program. In doing so, they assured the defendant that this time would be credited toward his sentence. When the error was discovered, the defendant sought to have the time credited. Our supreme court held that credit was appropriate since assurances had been made to the defendant that he would be given credit. *Id.* at 96–98, 588 A.2d at 901. The court reached this conclusion while recognizing that a defendant is required to serve his sentence in a prison, not at home, and that a defendant on home monitoring is not entitled to credit for time served. *Id.*[4]

2. It is unclear from the record whether appellant's house arrest status ended in October of 1996 or December of that year. In any event, appellant himself argues that December 29, 1993 (the date of his release under the federal court order) to October 12, 1996 (the date he moved without notification to authorities) constitutes the time period for which he should be awarded credit as a "house arrestee."

3. Appellant also insists that he is entitled to credit for the time he spent out of custody without any home supervision (October 1996 through October 1998). Because we find that he is not entitled to credit for his period of home monitoring, we likewise find this claim without merit.

4. Appellant also relies on *Jacobs v. Robinson,* 49 Pa.Cmwlth. 194, 410 A.2d 959 (1980). In *Jacobs* the defendant, after serving part of his sentence in jail, was released from prison as a result of a clerical error. The defendant was placed on probation. After authorities realized their mistake, they returned him to cus-

¶ 8 The Commonwealth argues that this case is not governed by *Kriston*, but by *Blair, supra*. *Blair* involved the release of a defendant on bail pending appeal. The matter was affirmed on appeal and the record was remanded to the trial court. At that point, in accordance with Pa.R.A.P. 1763, the trial court should have ordered the defendant to appear before it for sentencing, but it failed to do so. Two years passed before the court realized its error. When the defendant ultimately was sentenced, he requested credit for the time served. This court held he was not entitled to credit.

¶ 9 Recognizing that the defendant had not engineered his freedom, either by fleeing or concealing his identity once out on the street, the *Blair* court nonetheless held that the court system's error could not work to the defendant's benefit. *Blair, supra*, 699 A.2d at 743.[5] The *Blair* court emphasized that society had an interest in knowing that convicted criminals would be incapacitated.

¶ 10 In addition to *Kriston* and *Blair*, the Commonwealth also brings to our attention *Shartle, supra*. In that case, the defendant sought credit for her release, after arraignment and prior to trial, during which time she was on house arrest. Relying on *Kriston's* reasoning that "confinement to [one's] ... home was not the equivalent of time served in an institutional setting," the *Shartle* court ruled that

credit was improper. *Shartle, supra*, 652 A.2d at 877.

¶ 11 After careful consideration of the facts in this case and the applicable law, we conclude that appellant is not entitled to credit for time served while on house arrest. The statute limits time served to time in custody. Custody has been strictly defined and does not include house arrest. *Kriston, supra; Shartle, supra*. The only precedent is found in the exception carved out in *Kriston*. That exception, however, was narrowly drawn and applied where the defendant was given assurances that he would be entitled to credit against his sentence for the period of home monitoring. In this case, appellant was given no such assurances.

¶ 12 Based on the controlling statute and case law, appellant is not entitled to credit for his period of time on house arrest. However, this case does present a novel question; that is, does the fact that appellant's house arrest was triggered by a federal court order compel a different result? We conclude that it cannot. The language of the statute, and the case law interpreting it, lead to the inevitable conclusion that home monitoring does not satisfy the mandate of confinement in prison unless the defendant is informed that credit will be given. *Kriston, supra; Shartle, supra*. Hence, credit in these circumstances is improper.[6]

tody and denied him credit for his time on probation. The Commonwealth court disagreed and held that credit was appropriate. Without reference to statutory authority, the *Jacobs* court concluded that the defendant, who had not requested his release, was entitled to serve his sentence continuously, rather than in installments. *Id.* at 960. We are not bound by holdings of the Commonwealth Court. We are, however, bound by the holdings of our supreme court, which has stated unequivocally that time spent on a home monitoring program cannot be credited to one's prison sentence in the absence of a promise by authorities. *Kriston, supra*.

5. The *Blair* court distinguished *Kriston* and *Jacobs* on several grounds. First, it observed that no assurances had been made to defen-

dant *Blair* as had been made in *Kriston*. Second, it noted that defendant *Blair* had truly been at liberty during his release, not on probation, as in *Jacobs*, or on home monitoring, as in *Kriston*. Finally, the *Blair* court stated that unlike the defendant in *Jacobs*, the defendant in *Blair* was not being required to serve his sentence in installments, as he had not yet been sentenced for his crime when he was inadvertently released.

6. The dissent relies on procedural due process in concluding that appellant is entitled to relief. However, appellant did not rely on due process either in the trial court or as a basis for this appeal. Hence, we cannot do so *sua sponte*. *See Com., Dept. of Transportation v. Boros*, 533 Pa. 214, 620 A.2d 1139, 1142–43

¶ 13 We are aware that the overcrowded prison system in Philadelphia County and elsewhere presents a wide range of difficulties.[7] However, it is the role of the legislature and not the courts to decide whether non-violent offenders serving house arrest should receive credit against their sentences. As Justice Flaherty noted, "a cure for the problem of prison overcrowding . . . is properly within the legislative realm. This Court cannot intrude into the legislative realm to deal with the problem, by upholding home monitoring as a means of serving [prison time]. . . ." *Kriston, supra* at 96, 588 A.2d at 901.

¶ 14 Judgment of sentence affirmed.

¶ 15 SCHILLER, J., files a Dissenting Statement.

SCHILLER, J., dissenting.

¶ 1 I respectfully dissent. Although I agree with the majority's view that home monitoring is not the equivalent of custody, it is, nevertheless, a significant curtailment of one's freedom. In my view, such a loss of liberty may not be imposed unless due process procedures have been met.

Appellant, in this instance, was not afforded due process, and I believe credit must be awarded for the time he spent under home detention.

¶ 2 Appellant was in jail because he was unable to afford bail during the pendency of the Commonwealth's appeal. For each day spent in jail, he was entitled to an equivalent one-day reduction of any sentence subsequently imposed. However, those conditions were arbitrarily changed not once but twice: first, when pursuant to a federal court order, Appellant was placed on home monitoring, and next, when the trial court ruled that Appellant would not be given credit for the time spent under home detention. Thus, Appellant's sentence of four to eight years' imprisonment was increased by thirty-four months of home monitoring as a result of a federal order of which Appellant had no notice, the consequences of which were unknown to him and which he was given no opportunity to dispute. In my view, failure to give Appellant credit in these circumstances violates the principles of fundamental fairness underpinning our criminal justice system.[8]

(1993)(Commonwealth Court did not have the power to consider statute as an affirmative defense where defendant failed to rely on same). *See also Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961, 973 (1994)(observing the "well-settled legal rule that an appellate court may not raise a constitutional issue *sua sponte* "), *appeal denied*, 541 Pa. 632, 663 A.2d 685 (1995). Further, the case upon which the dissent relies is not grounded in due process. *See Commonwealth v. Kriston* (527 Pa. 90, 588 A.2d 898 (1991) (credit proper where failure to do so constitutes "manifest injustice")). Instead, *Kriston* explicitly states that home monitoring is not the equivalent of custody and thus cannot be considered as "time served." *Id.* at 97, 588 A.2d at 901 ("[I]t would grossly distort the language used by the legislature if we were to conclude that the term 'imprisonment' means 'merely staying at home.' "") It was only because authorities in *Kriston* made assurances to the appellant that the court found credit was due:

> Before entering the electronic home monitoring program, appellant was *assured* by prison authorities that time spent in the monitoring program would count towards

his minimum sentence. Under these circumstances, denying appellant credit for time served in home monitoring would constitute a manifest injustice.

*Id.* (emphasis in original).

We agree that appellant and many Philadelphia inmates like him suffer a significant curtailment of their freedom as a result of the prison-overcrowding solutions in place in that county. We believe, however, that only the legislature, not the courts, can address the specific problem raised in this case.

7. In 1992 our Commonwealth Court observed that, upon passage, the prison cap order mandated the release of some 600 prisoners, with approximately 90 more eligible each week thereafter. *Abraham, supra* at 816.

8. "Procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 1999 Pa. Lexis 2578 (1999), (citing *Krupinski v. Vocational Technical School*, 544 Pa. 58, 674 A.2d 683, 685 (1996)).

¶ 3 Moreover, I find this case more akin to *Commonwealth v. Kriston*, 527 Pa. 90, 588 A.2d 898 (1991), where a defendant released in error to home monitoring was held to be entitled to credit based on assurances given by prison authorities, rather than to *Commonwealth v. Blair*, 699 A.2d 738 (Pa.Super.1997) where no credit was given to a defendant who through bureaucratic oversight remained free on bail for two years after his appeal was decided. Quite simply, the defendant in *Blair* had no expectation of accruing credit against his sentence nor did he suffer a loss of freedom. Appellant herein and the defendant in *Kriston* each reasonably expected that the limitations on their liberty imposed by home monitoring were to be compensated by credit against their sentences. I believe the distinguishing fact in each instance is not whether the defendant was given explicit or implicit assurances of credit, but whether he suffered a loss of liberty in the absence of procedural due process. Given the lack of due process here, I would award credit to Appellant for the time spent under home monitoring.