895 A.2d 528

George CHAJKOWSKY, as the Administrator of the Estate of Irene Chajkowsky, Deceased, and George Chajkowsky in His Own Right, Appellant,

v.

PENNSYLVANIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION, and Medical Professional Liability Catastrophe Loss Fund and Alfonso Wong, M.D., Appellees.

No. 57 MAP 2004.

Supreme Court of Pennsylvania.

April 21, 2006.

## ORDER

PER CURIAM.

**AND NOW,** this 21st day of April, 2006, the Order of the Commonwealth Court is affirmed.

Mr. Justice Baer files a concurring statement.

Justice BAER, concurs.

This is a direct appeal presenting an issue regarding the workings of the statutory scheme of the Pennsylvania Property and Casualty Insurance Guaranty Association Act, which regulates the means of paying "covered claims" [1] under certain

---

1. "Covered claims" are defined as:

property and casualty insurance policies. *See* 40 P.S. § 991.1801.

Appellant instituted a medical malpractice action against a defendant-doctor who was insured by PIC Insurance Group (PIC) for $200,000. PIC was subsequently placed into liquidation, thus obliging the Pennsylvania Property and Casualty Insurance Guaranty Association (the Guaranty Association)[2] to pay PIC's covered claims. The statutory amount the Guaranty Association was obligated to pay was the lesser of the covered claim obligation, PIC's policy limit of $200,000, or the statutory maximum of $300,000. 40 P.S. § 991.1803(b).

The jury returned a verdict for Appellant, which the trial court molded to $3,500,263. The Guaranty Association paid Appellant $200,000, which represented the defendant-doctor's policy limits with PIC but was $100,000 less than the Guaranty Association's $300,000 cap. Appellant filed a declaratory judgment action against the Guaranty Association seeking the additional $100,000 to compensate Appellant for delay damages and post-judgment interest. The Commonwealth Court stayed consideration of the issue until we decided the appeal of *Elliott–Reese v. Medical Professional Liability Catastrophe Fund*, 805 A.2d 1253 (Pa.Cmwlth.2002).

The plaintiff in *Elliott–Reese* instituted a medical malpractice action against two physicians, each of whom was insured for $200,000. The jury returned a verdict for plaintiff in the amount of $1,124,029. The Guaranty Association paid an amount representing the policy limits of the physicians' two insolvent insurance policies, $400,000, less appropriate statuto-

---

(1) An unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and is subject to the applicable limits of an insurance policy to which this article applies issued by an insurer if such insurer becomes an insolvent insurer after the effective date of this article. . . .
40 P.S. § 991.1802

**2.** The Guaranty Association was created in 1994 to provide a means of paying covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to prevent claimants or policyholders from incurring financial loss because of an insurer's insolvency. 40 P.S. §§ 991.1801, 991.1803(b) (defining the Guaranty Association's powers and obligations).

rily authorized offsets, but refused to pay delay damages or post-judgment interest.[3]  Plaintiff filed a petition with the Commonwealth Court against the Guaranty Association, *inter alia*, seeking payment of delay damages and post-judgment interest.  The Commonwealth Court held that the plaintiff was not entitled to delay damages or interest because the Guaranty Association's obligation to the plaintiff was statutorily limited to the policy limits provided by the physician's insolvent liability insurance policy, $400,000, less offsets.  We affirmed the Commonwealth Court by *per curiam* order.[4] *Elliott–Reese v. Medical Professional Liability Catastrophe Loss Fund*, 574 Pa. 705, 833 A.2d 138 (2003).

After the *per curiam* affirmance in *Elliott–Reese*, the Commonwealth Court decided the case before us.  It found that this case was governed by *Elliott–Reese*, and held that the Guaranty Association was only obligated to pay out the policy limits of the defendant's policy, in this case $200,000, and not any delay damages or interest sought by Appellant notwithstanding the availability of an additional $100,000 under the statutory cap.  On appeal to this Court, Appellant argues that, because delay damages and post-judgment interest become part of the verdict against an insurer, the Guaranty Association should likewise be required to pay them, over and above the policy limits but subject to the statutory cap of $300,000. The Guaranty Association argues that it has paid policy limits, which is all it is statutorily obligated to pay.  Our Court now seems to accept this argument through its *per curiam* affirmance.

While I agree that the Commonwealth Court's order should be affirmed, I write separately to note my belief the that the Guaranty Association may be liable for delay damages when it

**3.**  Presumably, under the facts of *Elliott–Reese*, the combined statutory cap was $600,000, representing two covered claims, one against each of the two insolvent physicians, up to $300,000 in liability each, but the court did not speak directly to this factual issue.  Thus, in that case, as here, it appears that the Guaranty Association paid policy limits, but that excess monies, up to the statutory cap, were available.

**4.**  A *per curiam* order of affirmance does not carry any precedential weight.  *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898 (1996).

has paid out an amount equal to the defendant's policy limit with the insolvent insurer, but less than the statutory cap. I do not believe, however, that this case is the appropriate vehicle for addressing this issue. Rather, I believe that before this Court can review the statutory language governing the Guaranty Association in this regard, we must engage in a predicate analysis of the Superior Court's decision in *Hall v. Brown,* 363 Pa.Super. 415, 526 A.2d 413 (1987) (holding that an insurance carrier that has paid the limits of the policy will not be liable for delay damages except when acting in bad faith). This Court has never reviewed the propriety of *Hall,* and the parties in this action, like those in *Elliott–Reese,* have not raised the validity or effect of *Hall,* or asserted that the Guaranty Association acted in bad faith as the Superior Court required in *Hall* before an obligation to pay delay damages arises.

Therefore, because the parties have not asked this Court to review the matter pursuant to *Hall,* which, in my opinion, is necessary before we can determine whether the Guaranty Association may be liable for delay damages, I concur with the majority's *per curiam* affirmance of the Commonwealth Court.