**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAWN MARIE BALL | |
| Appellant | No. 1909 MDA 2014 |

Appeal from the Judgment of Sentence June 11, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000979-2010

BEFORE: BOWES, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:　　　　　　**FILED FEBRUARY 12, 2016**

Appellant, Dawn Ball, appeals from the judgment of sentence[1] entered in the Lycoming County Court of Common Pleas following her convictions for aggravated harassment by a prisoner,[2] simple assault,[3] and harassment.[4] Appellant contends the sentence violates her state and federal constitutional

---

[*] Former Justice specially assigned to the Superior Court.

[1] Appellant purported to appeal from the October 15, 2014 order denying her post-sentence motion. "However, when timely post-sentence motions are filed, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Kuykendall**, 2 A.3d 559, 560 n.1 (Pa. Super. 2010). Accordingly, we have amended the caption.

[2] 18 Pa.C.S. § 2703.1.

[3] 18 Pa.C.S. § 2701(a)(1).

[4] 18 Pa.C.S. § 2709(a)(1).

rights and that the evidence was insufficient to sustain her conviction for simple assault. We affirm. We deny counsel's application to withdraw without prejudice.

We adopt the recitation of facts and procedural history as set forth by the trial court. Trial Ct. Op., 7/7/15, at 1-3.[5] On June 11, 2014, the court sentenced Appellant to nine to eighteen months' imprisonment in a state correctional institution, consecutive to the one to eight year prison sentence she was already serving. On June 26, 2014, Appellant filed a post sentence motion requesting the court to "grant leave for Defense to file a Post Sentence Motion *Nunc Pro Tunc*." Appellant's Post Sentence Mot. Nunc Pro Tunc, 6/26/14 at 1 ¶6. On July 10, 2014, the court granted the motion to file post trial motion *nunc pro tunc*. The court denied the motion on October 15, 2014. On October 16, 2014, the court denied additional issues Appellant raised *pro se*. This timely appeal followed. Appellant filed a court-ordered

---

[5] In its opinion and order denying Appellant's post sentence motion the trial court noted

> [b]y way of background, the charges were filed against [Appellant] on April 1, 2010. Reaching trial was a long and tortured process. The case has and continues to be complicated by [Appellant's] institutional behaviors, [her] demands on counsel, [her] relationship with counsel, [Appellant's] mistrust of counsel, [her] barrage of written correspondence to the [c]ourt, a plethora of motions relating in large part to representation of [A]ppellant, and the [c]ourt seeking information from appropriate professionals with respect to [Appellant's] mental health.

Trial Ct. Op., 10/15/14, at 1.

Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> 1. Were the Appellant's State and Federal Constitutional rights violated when she was sentenced to an aggregate term of state incarceration for less than a two (2) year sentence?
>
> 2. Was there significant evidence to support a conviction concerning "substantial pain" required for Simple Assault and was there a nexus between liquid at the prison and irritation in the eye?

Appellant's Brief at 4.

First, "Appellant argues that the sentencing Court has violated her constitutional rights in that the aggregation of her sentences is not applicable as the sentencing courts were separate sovereigns." *Id.* at 11. In support of this contention, she avers that the first sentence of one to eight years was entered in Northampton County,[6] while the instant contested sentence was imposed in Lycoming County. *Id.* at 13. Appellant concludes that she "should have been sentenced under 42 Pa.C.S.A. § 9761[7] and not 42 Pa.C.S.A. § 9757."[8] *Id.*

---

[6] CP-48-0000621-2007.

[7] Section 9761 provides:

> **(b) Sentences imposed by other sovereigns.**—If the defendant is at the time of sentencing subject to imprisonment under the authority of **any other sovereign**, the court may indicate that imprisonment under such other authority shall satisfy or be credited

against both the minimum and maximum time imposed under the court's sentence. If the defendant is released by such other authority before the expiration of the minimum time imposed by the court, **he shall be returned to a correctional institution of the Commonwealth** to serve the time which remains of the sentence. If the defendant is released after the minimum time has elapsed, he shall be considered for parole on the same basis as a prisoner who has served his minimum time in a correctional institution of the Commonwealth. If the defendant is released after the maximum time imposed under the sentence of imprisonment he shall be deemed to have served his sentence.

42 Pa.C.S. § 9761(b) (emphasis added).

[8] We note that Appellant raised the following issue in her Rule 1925(b) statement:

[Appellant's] constitutional rights under equal protection incorporated through the 14th Amendment of the U[.]S[.] Constitution were violated when the [c]ourt relied on *Commonwealth vs. Tilghman*, 543 Pa. 578 (1996) and *Commonwealth v. Harris*, 620 A.2d 1175 (Pa. Super 1993) and **42 Pa.C.S.A. § 9761** in its order dated August 1, 2014 . . . .

Concise Statement of Matters Complained of on Appeal Pursuant to Pa.R.Crim.P. 1925(b) (emphasis added).

Instantly, the trial court noted that Appellant did not raise this issue in her written or oral post sentence motions and "question(ed) whether this issue has been properly preserved for appellate review." Trial Ct. Op., 7/7/15, at 4. We note that Appellant is challenging the legality of her sentence. *See Commonwealth v. Foster*, 17 A.3d 332, 342 (Pa. 2011) (citing *In re M.W.*, 725 A.2d 729, 731 (Pa. 1999) (holding when sentencing issue "centers upon a court's statutory authority" to impose a sentence, rather than the "court's exercise of discretion in fashioning" the sentence, the issue raised implicates the legality of the sentence imposed)); *Commonwealth. v. Hall*, 652 A.2d 858, 860 n.2 (Pa. 1995) (citation omitted) ("aggregating consecutive sentences is mandatory; since this is not discretionary with the trial court, this interpretation of 42 Pa.C.S.A. Section 9757 does not violate the separation of powers doctrine")). Therefore, it is

- 4 -

Our review is governed by the following principles: "Issues relating to the legality of a sentence are questions of law[.] . . . Our standard of review over such questions is *de novo* and our scope of review is plenary." ***Commonwealth v. Fennell***, 105 A.3d 13, 15 (Pa. Super. 2014) (citation omitted), *appeal denied*, 121 A.3d 494 (Pa. 2015).

> Pennsylvania statutory law provides:
>
> Whenever the court determines that a sentence should be served consecutively to one being then imposed by the court, or to one previously imposed, the court shall indicate the minimum sentence to be served for the total of all offenses with respect to which sentence is imposed. Such minimum shall not exceed one-half of the maximum sentence imposed.
>
> 42 Pa.C.S.A. § 9757. Our Commonwealth Court has interpreted this statute to mandate automatic aggregation of sentences once the trial court imposes a consecutive

non-waivable. ***See Commonwealth v. Dickson***, 918 A.2d 95, 99 (Pa. 2007) (holding "if the sentence clearly implicates the legality of sentence, whether it was properly preserved below is of no moment, as a challenge to the legality of sentence cannot be waived.").

Furthermore, we note that the trial court's August 1st amended order provided, in pertinent part, as follows:

> This sentence shall run consecutively to any and all sentences that [Appellant] is presently serving, including but not limited to the 1-8 year sentence imposed by Northampton County . . . . These sentences shall aggregate, making [Appellant's] sentence in this case a state sentence. ***See 42 Pa.C.S. § 9757*** . . . . Therefore, [Appellant] shall remain incarcerated in a state correctional facility.

Amended Order, 8/1/14, at 2 (emphasis added).

- 5 -

sentence. ***Gillespie v. Commonwealth Department of Corrections***, [ ] 527 A.2d 1061, 1065 ([Pa. Cmwlth.] 1987) . . . .

***Commonwealth v. Harris***, 620 A.2d 1175, 1179 (Pa. Super. 1993); ***see also Commonwealth v. Tilghman***, 673 A.2d 898, 901-02 (Pa. 1996) (holding consecutive sentence should be aggregated pursuant to Section 9757). "Section 9757, however, clearly by its terms, referring specifically to previously imposed sentences, applies to sentences imposed at different times by different courts." ***Gillespie***, 527 A.2d at 1066.[9]

Instantly, the trial court opined: "The court also notes that it did not rely on 42 Pa.C.S.A. § 9761 in its order dated August 1, 2014; it relied on 42 Pa.C.S.A. § 9757. . . . Where, as here, consecutive sentences were imposed by two courts of common pleas, the sentences aggregate as a matter of law." Trial Ct. Op., 7/7/15, at 4.

Section 9757 is applicable in the instant case because Appellant was sentenced by two courts of common pleas, *viz.*, Northampton County and Lycoming County. ***See Gillespie***, 527 A.2d at 1066. Therefore, the sentences are aggregated. ***See*** 42 Pa.C.S. § 9757; ***Tilghman***, 673 A.2d at 901-02, ***Harris***, 620 A.2d at 1179; ***Gillespie***, 527 A.2d at 1066.

Lastly, Appellant contends "the evidence at trial was insufficient to support [her] conviction for simple assault because no evidence was

_____

[9] We note that "[a]lthough decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." ***NASDAQ OMX PHLX, Inc. v. PennMont Sec.***, 52 A.3d 296, 320 (Pa. Super. 2012).

presented the C.O. George's eye pain constituted substantial pain." Appellant's Brief at 14. Appellant states: "Correctional Officer George testified that on **December 7, 2009** she was working in the Restrictive Housing Unit. While passing [Appellant's] cell, she was hit in the face with a liquid, which got in her eyes, nose and mouth." *Id.* at 15 (citation to the record omitted and emphasis added).

In support of her argument that the trial court erred in indicating that C.O. George testified she immediately felt irritation, Appellant notes that "the testimony at trial indicates that C.O. George sought medical treatment on **December 7, 2009**, **5 days later**."[10] *Id.* at 15-16 (emphasis added). Appellant avers "[t]here was no indication or expert testimony at trial that the liquid caused the irritation." *Id.* at 16.

The standard of review for a challenge to the sufficiency of the evidence is *de novo*, as it is a question of law. ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235 (Pa. 2007).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

\* \* \*

---

[10] We note that Appellant ostensibly refers to the incident which occurred on December 2, 2009, for which no medical treatment was required.

When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt.

*Id.* at 1235-36, 1237 (citations and quotation marks omitted).

The Pennsylvania Crimes code defines simple assault as follows:

**(a) Offense defined.**— Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as "impairment of physical condition **or** substantial pain." 18 Pa.C.S. § 2301 (emphasis added). "The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994) (citation omitted). In *Richardson*, this Court found the evidence sufficient to support a conviction for simple assault where the defendant punched the police officer in the face which caused the officer "to suffer a sore jaw for a couple of days but did not require him to go to a hospital or to miss work." *Id.*

At trial, Corrections Officer Maurica George testified that on **December 2, 2009** she was assigned to the RHU. N.T., 9/20/12, at 33. She handed out and collected meal trays from the inmates. *Id.* at 32. She testified, *inter alia*, as follows:

> [The Commonwealth]: How are the meal trays given to the inmates in the RHU?
>
> A: They're wheeled in and you take a tray and you open the wicket and you hand a tray to the inmate.
>
> Q: And then how do you collect the trays?
>
> A: Do the reverse. You open the wicket and the inmate hands you the tray.
>
> THE COURT: Can you tell the jury what a wicket is?
>
> [The Commonwealth]: Your Honor, I will show a picture shortly.
>
> THE COURT: All right.
>
> *    *    *
>
> [The Commonwealth]: I'm going to show you a second photograph . . . . Does this appear to be an accurate portrayal of the wicket that would have been in [Appellant's] cell door?
>
> A: That is the food. It's actually known as a food aperture but we just shorten it to wicket.
>
> Q: And you would have handed her a tray through that opening?
>
> A: Yes.
>
> Q: And when you went to retrieve the tray what happened?

A: [Appellant], appeared to me, handing me the tray. As I took the tray then she spit on me.

Q: Where did the spit hit you?

A: In the right portion of my shirt.

\* \* \*

Q: . . . [W]ere you also working on **December 7th**?

A: Yes, I was.

Q: And during the afternoon did you hand out meal trays in the RHU?

A: Yes, I did.

Q: Did you attempt to hand [Appellant] a meal tray?

A: Attempted to.

Q: Would she accept it from your hand?

A: No. She stated, I'm not taking a tray from a nigger.

Q: Later that day did you collect meal trays from the neighboring [c]ells?

A: Yes, I did. I was at cell four[11] collecting that tray.

Q: What happened while you were near cell four?

A: Well, as I lift cell four, since December 2nd she spit on me I wasn't taking a chance so I was walking around like this to go to cell six.

Q: You're tracing an arc in front of the cell?

---

[11] Appellant was in cell five. **See** N.T., 9/20/12, at 50, 165. The trial court noted that at times cell five is referred to as cell 1005. They are references to the same cell. **Id.** at 195-96.

A: Yeah. It wasn't a straight shot. I arced around to go to cell six to collect that tray, and about right here is where you I [sic] something hit me and it was liquid. And then it got into my eyes right here and got into my nose, my mouth. It drenched—it drenched the whole of my right side.

Q: Did you see where the liquid came from?

A: Yes.

Q: Where did [sic] come from?

A: It came from right there.

Q: Is there a crack in the door there?

A: Yes, there is.

Q: . . . What does this picture depict, if you can tell?

A: That's the wicket, part of the wicket.

Q: And on the right side of the wicket does there appear to be a gap?

A: Yeah, there's a gap like right [sic].

\* \* \*

Q: After the liquid struck you did you hear anything from [Appellant]?

A: Yes. She called me a nigger. She said . . . that she was going to kill me. She was banging on her door. She just continued to tirade. Most of it was that I was a nigger.

\* \* \*

Q: **Did you experience any pain after the substance went in your eye?**

- 11 -

A: Yes. I was—**it was burning. My eyes were irritated for quite a while and then I had some pain in the right eye.**

Q: **Did you seek any medical treatment**?

A: Yes. **I went to the infirmary first and then I went out to Muncy Valley where they took blood. They washed it out again and they evaluated my [sic] and gave me a shot.**

Q: Did you miss any work?

A: Yes.

Q: **How long did the pain last?**

A: After I went back to work I still had pain.

Q: Did it last more than a day?

A: **It lasted for more than a day. It lasted more than a week.**

* * *

[Appellant's Counsel]: So what did you do immediately after you were struck?

A: Shock.

Q: . . . What did you physically do?

* * *

A: I think my partner—I went over to my partner or my partner came over to me and he—I don't remember what he said. And then I went up to the bubble because we couldn't find the eye station.

* * *

Q: What's the bubble?

\* \* \*

A: Our control center in the RHU has like a control center where the doors are all controlled there. You can't get into a door without them letting you in or out, so I went up there because they had an eye station up there.

Q: By eye—what are you talking about when you say eye station?

A: When you get something in your eyes, when your eyes are burning you have to flush it out because you don't want that irritant to damage your eye. So I had to go to where I knew there was a station.

Q: And did you flush your eye with the eye—

A: I flushed my eye upstairs, as well as the infirmary because it was still burning. And then at the hospital.

\* \* \*

Q: . . . Was your vision affected at all?

A: Yes.

N.T., 9/20/12, at 33, 35-36, 39-41, 43-45, 55-56, 60 (emphases added).

Corrections Officer Greg Pickering testified, *inter alia*, as follows:

[The Commonwealth]: Do you recall if you were working on December 7th 2009?

A: Yes. I was.

\* \* \*

Q: Do you recall being near Corrections Officer George that day?

A: Yes, I do.

Q: And where were you standing when you were close to her?

- 13 -

A: I was in back of her.

Q: Where was she standing?

A: She was—we were—if I remember right, I think we were either collecting or giving out trays at that point. I was right behind her as we were helping out.

Q: Did you observe an incident involving Ms. George?

A: Yes.

Q: What did you see?

A: I witnessed an unknown substance, a liquid, come out of a cell door which was housing a certain person that's here in the courtroom, and also witnessed some verbal exchange between [Appellant] toward Ms. George.

\* \* \*

Q: And did you see who was inside the cell the liquid came out of?

A: Yes. [Appellant] was inside.

*Id.* at 110-112.

Instantly, the record viewed in the light most favorable to the Commonwealth reveals that Appellant attempted to cause, or intentionally, knowingly or recklessly caused, bodily injury to C.O. George. *See* 18 Pa.C.S. § 2701(a)(1). After being stuck with the liquid in her eye, C.O. George experienced burning in her eyes, went to the hospital, missed work and had pain in her right eye for more than one week. *See* 18 Pa.C.S. § 2301; *Richardson*, 636 A.2d at 1196. After careful consideration of the entire record, we hold the evidence believed by the jury was sufficient to

- 14 -

sustain a simple assault conviction. ***See Ratsamy***, 934 A.2d at 1235-36. Accordingly, having discerned no error of law, we affirm. ***See id.*** at 1235.

Judgment of sentence affirmed. Application to Withdraw as Counsel denied without prejudice.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2016