# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonya Privette-James,            :
               Petitioner       :
                               :
          v.                     :    No. 933 C.D. 2016
                               :    Submitted: October 21, 2016
Workers' Compensation Appeal     :
Board (University of Pennsylvania),   :
             Respondent     :

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
                HONORABLE JULIA K. HEARTHWAY, Judge
                HONORABLE JOSEPH M. COSGROVE, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**             **FILED: March 22, 2017**

In this returning workers' compensation litigation, all that remains is a request that an insurer pay for (substantial) surgery bills even though they were incurred for a condition found to be non-work related.

The current appeal has its origin in our unreported decision in Privette-James v. Workers' Compensation Appeal Board (University of Pennsylvania) (Pa. Cmwlth., No. 1906 C.D. 2013, filed June 5, 2014), appeal denied, 106 A.3d 727 (Pa. 2015) (Privette-James I), which vacated in part an order of the Workers' Compensation Appeal Board (Board) and remanded with instructions to Workers' Compensation Judge Susan Kelly (WCJ) to consider whether the University of Pennsylvania (Employer) should be held liable, under a theory of equitable estoppel, for payment of Sonya Privette-James' (Claimant) medical bills for cervical surgery. On remand, the WCJ determined Claimant did

not preserve an estoppel claim by failing to raise it before the WCJ. On appeal, the Board affirmed. Here, Claimant contends the WCJ erred in determining Claimant did not preserve an estoppel claim. For the reasons that follow, we affirm.

## I. Background

The factual and procedural background to this case is set forth in Privette-James I. Claimant worked for Employer as a sterilization attendant. Her duties included sterilizing dental instruments for the clinics at Employer's Dental School. In 2006, Claimant sustained a work injury to her shoulder area while loading a 50-pound basket of dental instruments into a sterilizing machine. Employer issued a notice of temporary compensation payable, which thereafter converted to a notice of compensation payable (NCP). The NCP described Claimant's injury as partial tears of the right shoulder.

In May 2010, an IRE Physician performed an impairment rating evaluation (IRE) of Claimant. IRE Physician's report documented the history Claimant provided regarding her work injury and medical treatment. Claimant presented with pain in her shoulders, neck and upper back. In particular, Claimant reported pain in her right shoulder and down her right arm, numbness and tingling in her right hand, and decreased strength in her right arm.

IRE Physician opined Claimant reached maximum medical improvement (MMI) for her shoulders. The doctor diagnosed a right full thickness rotator cuff tear and right posterior labral tear. IRE Physician also diagnosed cervical disc herniations and cervical radiculopathy. IRE Physician determined

2

Claimant had an upper extremity impairment of seven percent and a whole body impairment of four percent. However, the doctor remarked that he performed the IRE for the right shoulder injury only. Nonetheless, IRE Physician noted in his report that if Claimant's cervical spine injuries were accepted as part of the compensable injury, the IRE rating would change.

## A. Petitions

In July 2010, Employer filed a modification petition seeking a change in Claimant's disability status from total to partial based on the IRE showing a whole person impairment of four percent. Claimant filed an answer denying Employer's material allegations.

In August 2010, Claimant filed a review petition alleging that in addition to her right shoulder injuries, she suffered work-related injuries to her cervical spine. Employer filed an answer denying Claimant's allegations.

In February 2011, Employer filed a modification/suspension petition based on a labor market survey. In light of Claimant's average weekly wage of $514.10, Employer asserted Claimant's benefits should be suspended or, at a minimum, reduced.

## B. WCJ's Decision
### 1. Review Petition – Cervical Injury

In her decision, the WCJ accepted the testimony of Employer's Orthopedist and Independent Medical Evaluation (IME) Physician, and IRE

Physician's report, as more credible and persuasive than any contrary testimony of Claimant's Orthopedist. WCJ's Op., 6/5/06, Finding of Fact (F.F.) No. 16. To that end, the WCJ accepted the testimony of Employer's Orthopedist, IME Physician, and IRE Physician as fact. Id. The WCJ also observed that Claimant did not begin treating for her neck injury until December 2006, six months after her work injury. F.F. No. 16(a).

The WCJ further found IME Physician's testimony inconsistent with that of Employer's Orthopedist as to whether Claimant sustained any neck injury, such as a cervical strain. To that end, the WCJ accepted Employer's Orthopedist's testimony, that Claimant did not sustain a neck injury, as more credible and persuasive than any contrary testimony of IME Physician. F.F. No. 16(c). The WCJ noted Employer's Orthopedist examined Claimant on three occasions, each of which was closer to the injury than IME Physician's examination. Id. Consequently, the WCJ made the following finding:

> Based on the credited testimony of [Employer's Orthopedist] and [IME Physician], the work related tears of the right shoulder sustained by Claimant are more specifically described as a partial thickness tear of the infraspinatus [tendon] without retraction and a tear of the posterior glenoid. These are the only injuries sustained by Claimant in the course of her employment with [Employer].

F.F. No. 19 (emphasis added).

Further, the WCJ specifically rejected Claimant's Orthopedist's cervical diagnoses and determined Claimant did not sustain any herniated cervical

4

discs or cervical radiculopathy, or any cervical injuries in the course of her employment. F.F. No. 20. Therefore, the WCJ denied Claimant's review petition seeking to expand the NCP's description of injury to include a cervical injury.

## 2. Modification Petition - IRE

In addition, the WCJ credited IRE Physician's opinion that Claimant reached MMI for her shoulders as of his May 2010 examination. F.F. No. 21; Conclusion of Law (C.L.) No. 6. The WCJ also credited IRE Physician's determination that Claimant had a whole body impairment of four percent. C.L. No. 7. Therefore, the WCJ granted Employer's petition and modified Claimant's disability status from total to partial for a 500-week period beginning May 18, 2010.

## 3. Modification Petition – Earning Capacity

The WCJ also found Employer's Vocational Expert's testimony credible and accepted it as fact. F.F. No. 18. Therefore, the WCJ determined Claimant had an earning capacity of $400.00 per week as of November 24, 2010. Accordingly, the WCJ modified Claimant's weekly benefit rate from $372.50 to $76.01 as of that date for the remainder of the 500-week partial disability period, which began to run in May 2010.

## C. Board's Decision

In a comprehensive opinion, the Board affirmed. Claimant petitioned for review.

**D. Issues Raised in Underlying Action**

Claimant presented several issues for review in Privette-James I concerning the denial of her review petition and the grant of Employer's modification petition based on earning capacity. In the present appeal, however, we need only address Claimant's equitable estoppel claim. Claimant argued that the WCJ and the Board erred in failing to order Employer estopped from denying the work-related nature of Claimant's cervical spine injury where: (1) Employer paid all of Claimant's medical expenses for her neck injury, thereby lulling Claimant into believing Employer accepted a cervical injury; and, (2) Employer's workers' compensation carrier, PMA Companies (Insurer) pre-approved Claimant's cervical surgery as work-related before rejecting the post-surgical bills, which totaled more than $100,000.00.

**E. Decision in Privette-James I**

In Privette-James I, we determined that competent medical evidence supported the WCJ's findings that Claimant did not sustain a work-related cervical injury. Therefore, we held the WCJ did not err or abuse her discretion in denying Claimant's review petition seeking to expand the NCP to include cervical injuries.

Nonetheless, we recognized that Claimant may have preserved an estoppel claim for payment of her medical expenses related to her cervical surgery, perhaps including treatment for damage to her vocal cords resulting from surgery. In particular, the WCJ found that Claimant's Surgeon informed Claimant that he received a pre-approval from Insurer for the neck injury.

6

We also noted that the record reflected that Employer's counsel did not dispute Claimant's counsel's representation that Insurer pre-approved Claimant's surgery and then denied payment for it after Claimant had the surgery. However, we also recognized the record lacked any documentary evidence supporting Claimant's assertion of Insurer's pre-approval of the surgery. As a result of Insurer's denial of payment for the surgery, Claimant received bills from her medical providers totaling more than $100,000. Regardless, we noted:

> the respected WCJ did not address any estoppel claim in either her facts or legal conclusions. Moreover, when the exhibits were offered, the WCJ did *not* understand that Claimant's cervical surgery bills were to be considered part of an estoppel claim, independent of a determination that a cervical injury was causally related to the work incident. In addition, Claimant's Counsel's statements at the time of the submission of the surgical bills seem inconsistent with consideration of the bills as part of an estoppel claim. At the end of the hearing, the WCJ encouraged Claimant's Counsel to 'update your litigation costs with your findings,' N.T., 6/14/11 at 26, but no such update and findings is part of the certified record. In short, it is unclear whether Claimant's Counsel fairly put the WCJ on notice of an estoppel claim before she issued her decision.

Privette-James I, Slip. Op. at 35 (citations omitted). As such, we concluded:

> Therefore, in the interests of justice, we hold a remand is necessary for further determinations on the following estoppel issues: (1) whether Claimant preserved an estoppel claim by fairly bringing it to the WCJ's attention; (2) if so, whether Insurer represented to Claimant that it pre-approved her cervical surgery; (3) if the issue is preserved, what medical bills are causally related to Insurer's pre-approval; and, (4) if the issue is preserved, whether Claimant established she relied on Insurer's representation to her financial detriment, where

7

Employer allegedly provided private health insurance coverage that may or may not cover the costs for Claimant's non-work related cervical surgery.

Id. at 36 (footnote omitted).

### F. WCJ's Decision on Remand

On remand, the WCJ made the following findings (with emphasis added):

5. Claimant did not preserve an estoppel claim by fairly bringing it to the WCJ's attention. The Judge finds that Claimant's position during litigation was that because the surgery was pre[-]approved, the Review Petition to add a cervical injury must be granted. The argument that the bills related to the cervical surgery must be paid based on principles of equitable estoppel whether or not the cervical surgery was found to be work related was not presented. Significant in reaching these determinations are the following:

(a) When Employer's counsel objected to Claimant's counsel's question to Claimant regarding the insurance she believed she carried for the cervical surgery, Claimant's counsel responded:

> 'The issue here, Your Honor, the main reason why we filed a petition is, she was approved for this surgery. She got the surgery and then the bill was denied. Now she's got a huge bill and that's part of the reason we filed the Review Petition.' [N.T., 6/14/11, at 13; R.R. at 14a].

Claimant's counsel did not argue that the bills should be paid based on equitable estoppel. Additionally, Claimant's counsel's subsequent statements soon after as set forth in Finding of Fact No. 5(b) are consistent with

8

non pursuit of a claim for payment based on equitable principles.

(b) When Claimant's counsel moved for the submission of medical bills ([N.T., 6/14/11 at 16; R.R. at 17a]) and the motion was objected to by Employer's counsel, this Judge stated:

> 'I think [Claimant's counsel] would like them to be paid should I find the neck to be work related; is that correct, Mr. Kapner?'
>
> [Claimant's counsel]:  Yes, Your Honor.
>
> WCJ:  That's the purpose for the submission?
>
> [Claimant's counsel]:  Exactly.  It's limited to that purpose.  I'm not trying to establish any other facts.

[Claimant's counsel's] response is consistent with his lack of pursuit of an equitable estoppel claim for payment.

(c) While Employer's counsel agreed with Claimant's counsel's representation that [Insurer] denied payment of the bill for cervical surgery after Claimant had gone through the process and had it pre-approved, Employer's counsel also noted that he did not know that for a fact. Significantly, it is clear from the notes of testimony that Employer's counsel framed the issue as presented as whether the neck was part of the work injury.  This is established through his objection to the question of the insurance Claimant believed she had for the surgery as not relevant (Page 13[; R.R. at 14a]), his objection to the submission of medical bills because a penalty petition was not filed and the neck was not an accepted injury (Page 16[; R.R. at 17a]) and his comment that whether the bill was paid or not was not relevant (Page 14[; R.R. at 15a]).  Employer's counsel's lack of knowledge of an equitable estoppel claim is consistent with the court not being on notice of an equitable estoppel claim.

9

(d) Reviewing the 6/14/11 [WCJ's hearing, notes of testimony] record as a whole finds that Claimant did not preserve an estoppel claim by fairly bringing it to the WCJ's attention.

(e) Notably and in support of the finding that an equitable estoppel was not presented, Claimant's counsel did not establish the requisite facts relative to an equitable estoppel claim. If such an argument was being advanced, it was incumbent upon counsel to present all evidence relevant to the issue during the pendency of the litigation. Claimant was provided with a full and fair opportunity to present all evidence. While Claimant testified that Dr. Siddiqi's office called and told her the surgery was pre[-]approved, she did not present any non hearsay evidence in support of her testimony. She did not present any evidence establishing that the Insurer pre[-]approved the surgery and she did not present evidence establishing that she relied on the Insurer's representation to her financial detriment although (allegedly) she had private health insurance.

(f) Claimant's counsel never cited case law addressing the issue of equitable estoppel during a hearing or in his 9/30/11 letter brief in support of the Review Petition which is notable as seeking payment on equitable principles is not a typical argument.

(g) In his letter brief, Claimant's counsel 'asks your Honor to grant [the Review Petition] so that Employer will be required to honor its word and pay the outstanding bills which would thus remove Claimant from collections activity[.]' Again, there is no request that Employer pay the bills on an equitable estoppel theory if the cervical injury was not found to be work related. The request is to grant the Review Petition, finding the cervical injury work related, so the bills would be paid.

WCJ's Remand Op., 8/21/15, Findings of Fact (F.F.) No. 5(a)-(g).

On appeal, the Board affirmed. Claimant petitions for review.[1]

## II. Issues

Claimant contends the WCJ's determination that she did not preserve an estoppel claim by not fairly bringing it to the WCJ's attention in the underlying litigation, either on the record or in argument, is unsupported by substantial evidence and contrary to law.

Claimant also requests that this Court, *en banc*, revisit the issues addressed and resolved in Privette-James I. See Pet'r's Br. at 25, 44. However, following our decision in Privette-James I, Claimant did not request reconsideration or re-argument *en banc*. Rather, Claimant filed a petition for allowance of appeal, which the Supreme Court denied. See Privette-James v. Workers' Comp. Appeal Bd. (Univ. of Pa.), appeal denied, 106 A.3d 727 (Pa. 2015). Consequently, our decision in Privette-James I stands as the law of the case. Commonwealth v. Tilghman, 673 A.2d 898 (Pa. 1996). "It is hornbook law that issues decided by an appellate court on a prior appeal between the same parties become the law of the case and will not be reconsidered on a second appeal." Commonwealth v. Tick, 246 A.2d 424, 427 (Pa. 1968).

In addition, we note that a remand does not permit a litigant a "proverbial second bite at the apple." Emory Worldwide v. Unemployment Comp.

---

[1] This Court's review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa. C.S. §704; Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

<u>Bd. of Review</u>, 540 A.2d 988, 990 (Pa. Cmwlth. 1988). Here, Claimant, upon filing a petition for review and application to proceed *in forma pauperis* in the present appeal, did not request an *en banc* assignment as to the non-remanded issues. Further, Claimant did not object to the Court's October 17, 2016 order directing that the case be submitted on briefs to a three-judge panel without oral argument. Regardless, because our decision in <u>Privette-James I</u> is the law of the case as to the non-remanded issues, we decline Claimant's offer to revisit them in this appeal. <u>Tilghman</u>; <u>Tick</u>. Nevertheless, upon entry of a final order in the present appeal, Claimant may file an application for re-argument *en banc*. <u>See</u> Chapter 25 of the Pennsylvania Rules of Appellate Procedure (relating to Post Submission Proceedings).

### III. Discussion

### A. Argument

As noted, we will only address Claimant's contention that the WCJ's determination (that she did not preserve an estoppel claim by not fairly bringing it to the WCJ's attention in the underlying litigation, either on the record or in argument) is unsupported by substantial evidence and contrary to law.

To the contrary, Claimant asserts she fairly raised the issue of equitable estoppel on the record and in her argument before the WCJ. In support of her position, Claimant cites <u>Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Korach)</u>, 883 A.2d 579 (Pa. 2005). Equitable estoppel arises in workers' compensation cases where the employer, by its acts, representations, admissions, or by its silence when it should speak out,

12

intentionally, or by culpable negligence, induces another to believe certain facts exist, and that person rightfully relies or acts on that belief so as to be prejudiced if the employer is permitted to deny the existence of such facts.  Id.

The essential elements of estoppel are inducement to believe certain facts exist by the party sought to be estopped and detrimental reliance on those purported facts by the party asserting estoppel.  Id.  In short, a necessary element of an estoppel claim is that the party sought to be estopped engaged in some form of misrepresentation, concealment or other inequitable conduct, in an effort to mislead the other party.  Id.

Here, Claimant acknowledges she never used the magic words *equitable estoppel*.  Nonetheless, Claimant argues, when an employer lures an employee or claimant into a false sense of security by paying her medical bills, an employer may be put on notice of the estoppel claim *if the WCJ conducts matters as if that was the case*.  Westinghouse.

Here, Claimant asserts Insurer promised to pay for the cervical surgery prior to surgery and that Claimant, the hospital, and Claimant's Surgeon relied upon that promise.  However, upon being presented with the bill, Insurer breached that promise by declining to pay for the surgery on the basis that it was not work-related.

Therefore, Claimant asserts, the only practical means she had of addressing the estoppel issue required that she file a review petition to force

13

Insurer to pay the surgical bills. In other words, Claimant premised her estoppel argument on the fact that Insurer recognized the cervical injury by its conduct in paying for Claimant's cervical treatment for four years.

In support of her argument, Claimant cites the following language from the WCJ at the June 2011 hearing (with emphasis added):

> [WCJ]: I think what [Claimant's counsel] is trying to establish is that it was pre-approved and then the bill was rejected after [Claimant] went to surgery; is that correct …?
>
> [Claimant's counsel]: That's correct, and <u>I know I can do it the long way and try to take all the different vendors depositions to establish that</u>.
>
> [WCJ]: <u>I'm not asking you what you could do. Let's move this along.</u>

WCJ's Hr'g, 6/14/11, N.T. at 14; R.R. at 15a.

Therefore, Claimant maintains, the record shows Claimant and her medical providers relied upon Insurer's promise to pay for the cervical surgery to her detriment. Further, Claimant asserts Employer did not, at any point, deny it was on notice of an estoppel claim.

In sum, Claimant argues the record clearly reflects Claimant adequately raised the estoppel issue before the WCJ and that Employer had notice of her estoppel claim. To that end, Claimant asserts Insurer's pre-approval and promises to pay for the cervical surgery lulled her into a false sense of security as to the fact that Insurer would pay for her cervical surgery. Thus, the decisions of

the WCJ and Board allowed Insurer to back out of its promises to pay and burdened Claimant with the weight of Insurer's misrepresentation. Consequently, granting Claimant an equitable remedy for Insurer's misrepresentations would advance this Court's directive that the Workers' Compensation Act[2] be liberally construed to effectuate its humanitarian purposes "with borderline interpretations resolved in favor of the injured employee." See Maple Creek Mining Co. v. Workers' Comp. Appeal Bd. (Bakos), 833 A.2d 1198, 1200 (Pa. Cmwlth. 2003). Therefore, Claimant requests that we reverse the WCJ's determination that Claimant did not preserve her estoppel claim and remand for a determination of the remainder of the estoppel issues to be addressed on remand as stated in Privette-James I.

## B. Analysis

To begin our analysis, we recognize the WCJ determined on remand that viewing the record as a whole, Claimant did not preserve an estoppel claim because she failed to legitimately bring it to the WCJ's attention. WCJ's Remand Op., 8/21/15, at F.F. Nos. 5, 5(d). The WCJ further found that although Claimant alleged in her review petition that Employer or Insurer pre-approved her cervical surgery, this fact does not support an argument that the bills related to the cervical surgery must be paid under a theory of equitable estoppel regardless of whether the cervical surgery is found to be work-related. F.F. No. 5.

We agree. As the WCJ explained in Finding of Fact No. 5(b), Claimant's counsel's statements when he moved for admission of the medical bills

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§1-1041.4, 2501-2708.

15

into evidence were inconsistent with pursuit of an equitable estoppel claim. Remand Op., F.F. No 5(b). When asked by the WCJ if Claimant would like for the bills to be paid if she found the neck condition to be work-related, Claimant's counsel replied "yes." See N.T., 6/14/11, at 16; R.R. at 17a. When asked whether that was the purpose of the submission, Claimant's counsel replied (with emphasis added): "Exactly. It's limited for that purpose. I'm not trying to establish any other facts." Id.

In addition, Employer's counsel's actions when Claimant's counsel submitted the medical bills were also inconsistent with an estoppel claim. Employer's counsel objected to the bills for the cervical surgery because they were not for a work-related condition. F.F. No. 5(c); N.T., 6/14/11, at 16; R.R. at 17a.

Most importantly, in finding that Claimant failed to present an equitable estoppel claim, the WCJ noted that Claimant failed to present any non-hearsay evidence in support of an equitable estoppel claim despite having been afforded a full and fair opportunity to do so. F.F. No. 5(e). Although Claimant testified that her surgeon, Dr. Siddiqi, informed her that her surgery was pre-approved, she presented no corroborative evidence to support that statement. Id.

Additionally, although Claimant submitted her medical bills into evidence, her counsel indicated they were introduced for the limited purpose of payment for the cervical injury *if the WCJ found Claimant's neck condition to be work-related*. N.T., 6/14/11, at 16; R.R. at 17a. In other words, Claimant's counsel did not ask that the bills be paid on the basis of equitable estoppel

16

regardless of whether the WCJ found Claimant's cervical injury to be work-related.

Finally, we recognize Claimant's counsel's September 2011 letter brief to the WCJ, submitted after the June 2011 WCJ's hearing, asserts "Employer's claims adjuster explicitly granted pre-approval for Claimant's cervical surgery," and that Claimant's medical providers relied upon this pre-approval to their detriment. See Claimant's Letter Br., 9/30/11, at 2 (Claimant's Br., App. C).[3] However, the next paragraph states:

> Claimant, the innocent victim of Employer's violation of its oath to cover the surgical treatment, was forced to file her petition for review and asks your Honor to grant it so that Employer will be required to honor its word and pay the outstanding bills, which will thus remove Claimant from collections activity.

Id.

As the WCJ notes, Claimant's counsel's letter brief requests that the review petition be granted in order for Employer to pay the medical bills. F.F. No. 5(g). "Again, there is no request that Employer pay the bills on an equitable estoppel theory if the cervical injury was not found to be work related." Id. To that end, Claimant cited no case law addressing the application of equitable estoppel. Rather, Claimant requested that the WCJ grant the review petition and find the cervical injury work related in order for the bills to be paid. Id.

---

[3] See WCJ's Remand Op., 8/21/15, Ex. J-2.

Summarizing, we agree with the Board and the WCJ that Claimant failed to preserve an equitable estoppel claim before the WCJ. Claimant did not argue before the WCJ that Insurer be held liable for Claimant's cervical surgery bills based on an equitable estoppel theory regardless of whether the WCJ granted or denied the review petition. Further, Claimant did not present any competent evidence corroborating her hearsay assertions that Insurer promised to pay for Claimant's cervical surgery regardless of whether the WCJ determined her neck condition to be work-related. As such, Claimant failed to put the WCJ on notice that she sought payment of her medical bills based on a theory of equitable estoppel even assuming the WCJ determined that her cervical surgery was not work-related. Westinghouse.

For these reasons, we affirm the Board's order.

_____
ROBERT SIMPSON, Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonya Privette-James,              :
                 Petitioner    :
                                 :

           v.               :    No. 933 C.D. 2016
                                 :

Workers' Compensation Appeal  :
Board (University of Pennsylvania),  :
               Respondent  :

## **O R D E R**

**AND NOW**, this 22nd day March, 2017, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sonya Privette-James,  :
               Petitioner  :
                                      :
          v.  :
                                        :
Workers' Compensation Appeal  :
Board (University of Pennsylvania),  :  No. 933 C.D. 2016
               Respondent  :  Submitted: October 21, 2016


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COSGROVE               FILED: March 22, 2017


      As I believe Petitioner has preserved her equitable estoppel claim, and as I further believe she should otherwise prevail, I must dissent.

      Petitioner relied on the actions of Respondent in seeking the medical procedure at issue. Her arguments below, while not infused with "magic words," nonetheless were sufficiently articulated, and clearly embraced equitable estoppel as their foundation. To read the record otherwise, as the Majority does, not only eviscerates the principles from which this species of estoppel arises, but does permanent damage to the underlying purpose of the Workers' Compensation Act[1]

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1-1041.4, 2501-2708.

itself and its "humanitarian objectives." *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency),* 597 A.2d 1116, 1120 (1991).

I must therefore dissent.

_____

JOSEPH M. COSGROVE, Judge