J-S26037-18

2020 PA Super 292

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| PHIL LEONE, | : |  |
|  | : |  |
| Appellant | : | No. 3307 EDA 2017 |

Appeal from the Judgment of Sentence June 5, 2017
In the Court of Common Pleas of Northampton County Criminal Division
at No(s): CP-48-CR-0000626-2016

BEFORE: BENDER, P.J.E., BOWES, J., and STEVENS*, P.J.E.

CONCURRING OPINION BY BOWES, J.: **FILED DECEMBER 21, 2020**

I concur in the learned Majority's overall holding that Appellant's claims regarding his designation as a sexually violent predator ("SVP"), are meritless in light of our Supreme Court's holding in ***Commonwealth v. Butler***, 226 A.3d 972 (Pa. 2020). But I must note my disagreement with respect to a number of matters that I believe the Majority has misconstrued.

This case was remanded to us from the Supreme Court of Pennsylvania, which granted the Commonwealth's cross-petition for allowance of appeal in a *per curiam* order vacating the entirety of this Court's earlier holding. ***See*** Order, 9/1/20, at 1 ("The order of the Superior Court is **VACATED**, and the matter is **REMANDED** for reconsideration in light of [***Butler***]." (emphases in original)). The Majority has interpreted this order as vacating only a "portion" of our prior order affirming in part, and vacating in part, Appellant's judgment of sentence. ***See*** Majority Opinion at 3. I must respectfully disagree.

---

\* Former Justice specially assigned to the Superior Court.

With respect to the scope and effect of *per curiam* orders, our Supreme Court has stated that the entry of such an order "reversing the final order of a lower tribunal" signifies the High Court's "disagreement with the lower tribunal's final disposition of the matter on appeal[.]" ***Commonwealth v. Tilghman***, 673 A.2d 898, 904 (Pa. 1996).[1] Accordingly, such order "becomes the law of the case." ***Id***. Furthermore, this holding also provides that *per curiam* orders must be interpreted with specificity as to the language utilized and the resulting legal effect. ***See***, ***e.g.***, ***id***. ("Unless we indicate that the **opinion** of the lower tribunal is affirmed *per curiam*, our order is not to be interpreted as adopting the rationale employed by the lower tribunal in reaching its final disposition." (emphasis in original)). Recent precedent from our Supreme Court has also explicitly disapproved of reading "limiting language" into the text of clearly drafted *per curiam* orders. ***See***, ***e.g.***, ***Commonwealth v. Johnson***, 231 A.3d 807, 816-17 (Pa. 2020).

Instantly, the language of the September 1, 2020 *per curiam* order betrays no equivocation in vacating the entirety of our prior holding. Moreover, the order does not affirm any aspect of our first disposition of this case. Where a *per curiam* order is phrased in this fashion, without language limiting its effect or explicitly affirming any aspect of this Court's prior

---

[1] The above-quoted discussion in ***Commonwealth v. Tilghman***, 673 A.2d 898, 904 (Pa. 1996), concerned the precedential value of cases affirmed in *per curiam* orders and is not in perfect procedural parity with the circumstances of this case. Nonetheless, the necessity of strictly and precisely effectuating the commands of the Supreme Court is evident from the holding.

treatment of the case, our Supreme Court's discussion of fairly analogous issues strongly suggests that we should strictly interpret it as such. **Accord Johnson**, **supra** at 816-17; **Tilghman**, **supra** at 904. Here, the plain language of the September 1, 2020 *per curiam* order directs that our prior holding be vacated, without reservation, and directs us to generally re-evaluate the appeal in the light of **Butler**. As such, I believe that no aspect of our prior holding has survived the natural consequences of such an unambiguous order.

This distinction is not a mere procedural formality. In total, Appellant has raised nine appellate issues for our review. **See** Appellant's brief at 11-12. However, the Majority's opinion only addresses two of these arguments. **See** Majority Opinion at 3-4. As our prior writing has been vacated, the ultimate effect of the Majority's holding is to deny, *sub silentio*, the lion's share of Appellant's claims for relief. Accordingly, I respectfully note my disagreement as to the Majority's decision to bypass the nine appellate issues originally raised and discussed by Appellant. I would substantively address these seven remaining issues along the same decisional lines previously discussed in the Majority's original memorandum and my initial concurrence.

Additionally, I also note that the Majority erroneously suggests that: (1) the Supreme Court's holding in **Butler** "considered SORNA I;"[2] and (2) the

---

[2] As used in the Majority's writing, "SORNA I" refers to the version of the statutory scheme at 42 Pa.C.S. §§ 9799.10-9799.41, that was in legal force

"relevant language" in "SORNA I and II" concerning SVP designations is "identical." Majority Opinion at 7 n.8. I disagree as to both points.

Contrary to the Majority's writing, our Supreme Court considered only the **amended** version of Subchapter H in rendering its decision in ***Butler***. ***See Butler***, ***supra*** at 981 n.11 (noting that the Supreme Court is evaluating the "Act 29 version" of the SVP provisions of Subchapter H). Moreover, the Supreme Court explicitly noted in ***Butler*** that the amended and unamended versions of Subchapter H were **not** identical in all relevant aspects. ***Id***. ("The only relevant change with regard to SVPs under Subchapter H is the addition of a provision allowing SVPs, and other lifetime registrants, to petition for removal from the registry after 25 years."). This lack of precision creates the potential for future confusion in an already fraught area of Pennsylvania law.

To summarize, I believe that the Majority has failed to give full effect to our Supreme Court's *per curiam* remand order and misrepresents our Supreme Court's holding in ***Butler***. Nonetheless, I concur in the Majority's analysis of those issues it has addressed.

_____

until February 21, 2018. Thereafter, significant amendments to Subchapter H, commonly referred to as Act 10 of 2018, took effect. The General Assembly also passed Act 29 of 2018, which also amended Subchapter H. The Majority collectively refers to these amendments as "SORNA II." In deference to the Supreme Court's designation in ***Commonwealth v. Butler***, 226 A.3d 972, 981 n.11 (Pa. 2020), I refer to this statutory scheme as "Subchapter H."