**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

IN RE: CHARLES ALEXANDER, PRO SE, : No. 49 MM 2025
AND CARRIS KOCHER, PRO SE, :
GREGORY STENSTROM, PRO SE, AND :
JOHN PROCTOR CHILD, :
:
          Petitioners :
:
:
:
          v. :
:
:
:
DELAWARE COUNTY BOARD OF :
ELECTIONS, ET AL., :
:
          Respondents :

## ORDER

**PER CURIAM**                                     **FILED: May 1, 2025**

*Pro se* applicant Gregory Stenstrom challenges this Court's earlier *per curiam* order in which we summarily denied the emergency petition for relief in an election matter filed by applicant and three co-petitioners. *See* Order, 49 MM 2025, 4/22/25. He argues our order is invalid and *ultra vires* because it was neither signed by a Justice of this Court nor accompanied by an explanation or opinion. Applicant presumes this means the Prothonotary's Office, which stamped and signed our order to certify it as "a true copy," improperly delegated to itself the authority to deny the petition on our behalf. This regularly recurring argument is frivolous, and we take this opportunity to explain why this is so, for the benefit of the bench, bar, and, perhaps most importantly, *pro se* litigants who raise the claim most often.

The heart of the problem is applicant's basic misunderstanding of the nature and effect of a *per curiam* ruling. "*Per curiam*" is a Latin phrase that literally translates to "by the court." A *per curiam* decision is unsigned because, as its translation suggests, it is intended to be institutional rather than individual — it is attributable to the court as an entity, not any single jurist. In short, when an appellate court in this Commonwealth rules *per curiam*, whether in the form of an order or an opinion, that necessarily means it is "attributed to the entire panel of judges who" considered the matter, even though it is "not signed by any particular judge on the panel." BLACK'S LAW DICTIONARY (12th ed. 2024) (*"per curiam"*).[1]

The ability to issue a ruling *per curiam* is a critical tool for any appellate court and serves many ends, not least of which is judicial efficiency. But the critical point is that a *per curiam* decision, though unsigned, still represents the collective judgment of the whole appellate body. Consider our own publicly codified Internal Operating Procedures (IOPs). *See* 210 Pa. Code §§63.1-63.13. They explain that to act on a petition like the one we previously denied in this matter, "[a] vote of the majority [of the participating Justices] is required to implement the proposed disposition." 210 Pa. Code §63.7(B). This confirms that, unless otherwise indicated,[2] every Justice on this Court carefully considers and

---

[1] Of course, individual jurists may concur with and/or dissent from *per curiam* decisions to the same extent as signed decisions. *See, e.g.*, *infra* note 2.

[2] *See, e.g.*, 210 Pa. Code §63.5(B) ("All orders resolving a non-capital direct appeal shall indicate if a Justice did not participate in the consideration or decision of the matter."; "A Justice may request that the order record that he or she voted for a different disposition."); *id*. at §63.7(B) ("Orders disposing of motions, petitions and applications shall indicate if a Justice did not participate in the consideration or decision of the matter."; "A Justice may request that the order record that he or she voted for a different disposition."); *cf. id*. at §63.7(D) (a single Justice under his or her own signature "may entertain and may grant or deny any request for relief which may under Pa.R.A.P. 123 or 3315 properly be sought by motion, except that a single Justice may not dismiss or otherwise determine an appeal or other proceeding").

passes upon every matter resolved by way of *per curiam* order issued by this Court.[3]  *See Tilghman*, 673 A.2d at 904 ("a *per curiam* order . . . signifies **this Court's**" decision) (emphasis added).  Indeed, that is exactly what occurred here.

This leads to our second clarification, relating to the Office of the Prothonotary. Rule of Appellate Procedure 3112 establishes an "Office of the Prothonotary" for each of this Commonwealth's appellate courts.  Pa.R.A.P. 3112.  By rule, each appellate court shall appoint a clerk of the court, known as the "Prothonotary," who "shall serve at the pleasure of the court."  Pa.R.A.P. 3111.  These appellate Prothonotaries, as well as their deputies and other duly authorized personnel and agents, are authorized to "exercise the power and perform the duties by law vested in and imposed upon" them and their offices, *see* Pa.R.A.P. 3112, including those established by this Court's rules and IOPs.  For example, this Court's Prothonotary is empowered by rule to "dispose of motions relating to the preparation, printing and filing of appendix and briefs and those motions generally relating to calendar control, along with the authority to recommend the appropriate sanction for the violation of any applicable rule or order."  Pa.R.A.P. 3305.  Our IOPs similarly provide that "[p]rocedural motions (*e.g.*, first requests for extension of time for not more than thirty days, requests to exceed page limits, and requests to proceed *in forma pauperis*) may be resolved by the Prothonotary without further action of the Court." 210 Pa. Code §63.7(A).

Most relevant here, where applicant challenges the validity of our prior *per curiam* denial of the emergency petition for relief filed on our miscellaneous docket, is Section 7 of this Court's IOPs.  *See* 210 Pa. Code §63.7.  That IOP sets forth the Prothonotary's

---

[3] For a fuller discussion on the use by appellate courts of *per curiam* orders and opinions to dispose of appeals (as opposed to motions, petitions, applications, and the like), including *per curiam* affirmances, reversals, and dismissals as improvidently granted, see *Commonwealth v. Tilghman*, 673 A.2d 898 (Pa. 1996).

duties with respect to docketing and assigning motions, miscellaneous petitions, and applications for relief. As the IOP details, after docketing such a filing, the Prothonotary's role is limited to assigning the matter within the Court. *See id*. at §63.7(B). The IOP makes clear, however, that it is this Court, and this Court alone, that ultimately acts on any such filing. Again, it takes "[a] vote of the majority" of the participating Justices "to implement the proposed disposition." *Id*. The Prothonotary and its employees take no part in those decisions, and they are not the authors of this Court's *per curiam* orders. When an employee of the Prothonotary's Office stamps or signs an order issued by this Court as "a true copy," it is not intended to convey that the Office or employee unilaterally decided the matter in the Court's stead. On the contrary, it is a verification that the order is, indeed, a true copy of **this Court's** decision. Such certifications are not substantive or related to the merits of the filing in any way; they are merely a byproduct of the Prothonotary's ministerial duties to maintain adequate records. *See, e.g.*, Pa.R.A.P. 3113 ("The prothonotary shall keep, in conformity with law, a docket of matters pending and decided in the court, and such other records as may be required by law or necessary for the operation of the court.").

Because it is clear applicant's challenge to our prior *per curiam* order is entirely frivolous, we **DENY** the Emergency Application for Relief to Strike Unlawful *Per Curiam* Denial. The Emergency Application for Reconsideration and Clarification of *Per Curiam* Denial is **DISMISSED AS MOOT**.[4]

---

[4] Further frivolous filings with this Court may result in filing restrictions or other sanctions.